**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**


| | | |
|---|---|---|
| EARNEST LANE, | ) | CASE NO. 3:11-cv-01178 |
| | ) | |
| Petitioner, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| JOHN COLEMAN, Warden | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

Petitioner, Earnest Lane ("Lane"), challenges the constitutionality of his conviction in the case of *State v. Lane*, Allen County Court of Common Pleas Case No. CR00 04 0159.  Lane, *pro se*, filed his Petition for a Writ of Habeas Corpus (ECF No. 1) pursuant to 28 U.S.C. § 2254 on June 8, 2011.  On June 3, 2013, Warden Kevin Jones ("Respondent") filed his Answer/Return of Writ.[1]  (ECF No. 7.)  Despite seeking and receiving an extension of time to file a Traverse (ECF No. 10), Lane did not do so.  For reasons set forth in detail below, it is recommended that Lane's petition be DENIED.

---

[1]  According to Respondent, "Petitioner Earnest Lane is currently incarcerated at the Allen/Oakwood Correctional Institution.  Kevin Jones is the acting warden of that institution and, as such, is the proper party Respondent. *Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004)."  (ECF No. 7 at n. 1.)

## I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct.  28 U.S.C. § 2254(e)(1); *see also House v. Bell,* 283 F.3d 37 (6th Cir. 2002).  The state appellate court summarized the facts underlying Lane's conviction as follows:

> On March 29, 2000, a house fire began on Leland Avenue.  Five residents of the home perished in the fire.  On April 19, 2000, Lane was indicted on one count of complicity in aggravated arson, one count of complicity in aggravated robbery with a firearm specification, and five counts of complicity in aggravated murder.  Lane entered a plea of not guilty to all charges on May 2, 2000, and counsel was appointed for him.  On August 4, 2000, Lane entered a plea of guilty, pursuant to an agreement, to the charge of complicity in aggravated arson, complicity in aggravated robbery without a firearm specification and to five counts of involuntary manslaughter.  Sentencing was deferred.  On November 16, 2000, Lane moved to withdraw his guilty plea.  On December 29, 2000, defense counsel filed a motion to withdraw from the case based upon a claim that continuing as defense counsel would result in a violation of disciplinary rules.  A hearing was held on the matter on January 11, 2001, and the motion to withdraw was granted.  New counsel was appointed.

> On February 22, 2001, a hearing was held on the motion to withdraw the guilty plea.  The trial court overruled the motion after the presentation of evidence at the hearing.  On March 27, 2001, a sentencing hearing was held and Lane was sentenced to a total of 19 years in prison.

*State v. Lane*, 2001-Ohio-2299, 2001 Ohio App. LEXIS 4783 (Ohio Ct. App., Oct. 26, 2001).

## II.  Procedural History

### A.   Conviction

During the April 2000 term, an Allen County Grand Jury charged Lane with one count of complicity to aggravated arson in violation of Ohio Revised Code ("O.R.C.") §§ 2909.02(A)(1) & 2923.03(A)(2), one count of complicity to aggravated robbery in violation of O.R.C. §§ 2911.01(A)(1) & 2923.03(A)(2) together with a firearm specification, and five counts of

complicity to aggravated murder in violation of O.R.C. §§ 2903.01(B) & 2923.03(A)(2).  (ECF No. 7-1, Exh. 1.)  On August 4, 2000, Lane, represented by counsel, entered a guilty plea to one count of complicity to aggravated arson, one count of complicity to aggravated robbery (amended to remove the firearm specification), and five counts of complicity to involuntary manslaughter (amended from aggravated murder).[2]  (ECF No. 7-1, Exh. 2.)

On November 16, 2000, Lane filed a motion to withdraw his guilty plea.  (ECF No. 7-1, Exh. 3.)  On February 22, 2001, the trial court held a hearing and overruled the motion.  (ECF No. 7-1, Exh. 4.)

On March 28, 2001, the trial court sentenced Lane to a term of nine years incarceration for complicity to aggravated arson, and nine years for each complicity to involuntary manslaughter conviction.  The sentences were to be served concurrently.[3]  In addition, Lane was sentenced to ten years incarceration for the complicity to aggravated robbery conviction, which was to be served consecutive to the other sentences, resulting in an aggregate prison term of nineteen years.  (ECF No. 7-1, Exh. 5.)

**B.    Direct Appeal**

On April 12, 2001, Lane filed a Notice of Appeal with the Court of Appeals for the Third Appellate District ("state appellate court").  (ECF No. 7-1, Exh. 6.)  Represented by new counsel, F. Stephen Chamberlain, Lane raised the following assignments of error:

---

[2]  During the plea phase of the proceedings, Lane was represented by defense counsel Jerome R. Doute, who also filed Lane's motion to withdraw the plea.  (ECF No. 7-1, Exh. 5.)  At the hearing addressing the motion to withdraw and at sentencing, Lane was represented by Gregory W. Donohue.  (ECF No. 7-1, Exhs. 4 & 5.)

[3]  Count One and Counts Three through Seven were merged due to "same and similar animus."  (ECF No. 7-1, Exh. 5.)

1. The Trial Court committed error prejudicial to the Defendant in overruling Defendant's Motion to Withdraw Guilty Plea prior to sentencing pursuant to Rule 32.1 of the Ohio Rules of Criminal Procedure.

2. That the Defendant's original trial counsel was ineffective to the prejudice of the Defendant and therefore, Defendant was deprived of his Constitutional Rights to Counsel.

3. That the Defendant's substitute counsel that was appointed to argue his motion for withdraw of guilty plea was ineffective to the prejudice of the Defendant and therefore, Defendant was deprived of his Constitutional Rights to Counsel.

(ECF No. 7-1, Exh. 7.)

On October 26, 2001, Lane's conviction was affirmed.  (ECF No. 7-1, Exh. 9.)

On December 10, 2001, Lane, through counsel, filed a Notice of Appeal with the

Supreme Court of Ohio.  (ECF No. 7-1, Exh. 10.)  Lane raised the following propositions of law:

I. That where a Trial Court allows an attorney to withdraw from participation in a felony criminal case for a claimed danger of violation of Attorney Disciplinary Rules, it is incumbent upon a Trial Court to conduct a hearing and asserted [sic] whether or not the violation has occurred and if the said violation prejudices or taints a Defendant's Constitutional Rights to be represented by Counsel.

II. That the factors to determine whether there has been a reasonable and legitimate basis for withdraw[al] of guilty plea prior to sentence should include, but not be limited to (1) whether the state will be prejudiced by withdrawal; (2) the representation afforded to the defendant by counsel and whether that representation is above an objective standard of reasonableness; (3) the extent of the Crim.R. 11 plea hearing as evidenced by more than rote recitation of rights and short affirmative responses from the defendant; (4) the extent of the hearing on the motion to withdraw; (5) whether the trial court gave full and fair consideration to the motion; (6) whether the timing of the motion was reasonable; (7) the reasons for the motion; (8) whether the defendant understood the nature of the charges and potential sentences; and (9) whether the accused was perhaps not guilty or had a complete defense to the charge.  Furthermore, that the free granting of withdraw of guilty pleas before sentence should be presumed by the trial court on a hearing on the motion to withdraw.

-4-

(ECF No. 7-1, Exh. 11.)

On March 4, 2002, the appeal was dismissed as not involving any substantial constitutional question.  (ECF No. 7-1, Exh. 12.)

**C.  Application to Reopen Appeal**

While his direct appeal was pending before the Supreme Court of Ohio, Lane, on January 31, 2002, filed an application to reopen pursuant to Ohio Appellate Rule 26(B) alleging ineffective assistance of appellate counsel.  (ECF No. 7-1, Exh. 13.)  Specifically, Lane argued that appellate counsel should have raised on appeal the disparity of the sentences received by his co-defendants in comparison to Lane's sentence.  *Id.*

On March 6, 2002, the state appellate court denied the motion as untimely and that Lane failed to show good cause excusing his untimeliness.  (ECF No. 7-1, Exh. 14.)  In addition, the court observed that Lane "fails to show that there is a genuine issue as to whether [he] was deprived of the effective assistance of counsel on appeal."  *Id.*

Lane did not appeal this decision to the Supreme Court of Ohio.

**D.  First Federal Habeas Petition**

On July 12, 2002, Lane, through counsel, filed a petition for writ of habeas corpus in the United States District Court for the Northern District of Ohio, Western Division, Case No. 3:02-cv-07358 challenging his 2001 convictions.  He raised the following grounds for relief:

> GROUND ONE: Conviction obtained by plea of guilty which was made or unlawfully induced or not made voluntarily with understanding of the charge or consequences of the plea.

> GROUND TWO: Denial of effective assistance of counsel.

(ECF No. 7-1, Exh. 15.)

On December 27, 2002, the District Court denied Lane's habeas petition on the merits and denied Lane a certificate of appealability.  (ECF No. 7-1, Exh. 16.)  Lane did not attempt to appeal this decision.

**E.   Resentencing and Subsequent Appeals**

On December 2, 2009, Lane, through new counsel, filed a "Motion of the Defense to Correct Status of Void Sentencing Entry with request for Conference and Motion for Bond Release."  (ECF No. 7-1, Exh. 17.)  Lane's argument was based on the judgment entry not specifying whether his conviction was the result of a guilty plea or jury verdict.  *Id.*

On December 23, 2009, a sentencing hearing was held; the court indicated that a *de novo* resentencing was necessary to correct error regarding the imposition of post-release control.[4] (ECF No. 7-1, Exhs. 18 & 19.)  Lane received the same aggregate sentence of nineteen years incarceration and was advised of the mandatory five-year term of post-release control.  (ECF No. 7-1, Exh. 19.)  The Judgment Entry also specified that Lane tendered a plea of guilty.  *Id.*

---

[4] Respondent asserts that the court's determination, that a *de novo* sentencing was necessary, was erroneous.  (ECF No. 7 at n. 3.)  Respondent cites *State v. Lester*, 958 N.E.2d 142, 130 Ohio St.3d 303, 2011-Ohio-5204 (Ohio 2011), which states that "if a judgment entry of conviction does not indicate how a defendant's conviction was effected ... and if it is not corrected by the court *sua sponte* ... a party may obtain a correction to the judgment entry by a motion filed with the trial court to correct the judgment of conviction....  But the fact that a defendant may be entitled to a revised order setting forth an inadvertently omitted term that is required by Crim.R. 32(C) as a matter of form does not prevent an original order that conforms to the substantive requirements of Crim.R. 32(C) from being final."  The *Lester* court held that "a *nunc pro tunc* judgment entry issued for the sole purpose of complying with Crim.R. 32(C) to correct a clerical omission in a final judgment entry is not a new final order from which a new appeal may be taken."  *Id*. at ¶20.  While it appears a *de novo* resentencing may not have been necessary under later state court precedent cited by Respondent, it is unclear whether a *de novo* resentencing was prohibited at the time of the resentencing.  Furthermore, correcting an error in the imposition of post-release control is not controlled by *Lester*.

On January 25, 2010, Lane filed a Notice of Appeal with the state appellate court raising

the following assignments of error:

1. The Trial Court violated Criminal Rule 11 in accepting this plea.

2. The plea by Mr. Lane was not knowing, voluntary, and intelligent because the Trial Court declined to advise Mr. Lane that the sentence would include *mandatory* post-release control and otherwise erred in the advice.

3. The Trial Court abused its discretion in denying the defense motion to withdraw his plea.

4. The Sentence imposed in this Case was Imposed by Application of Law that is and was Unconstitutional, in Violation of Many Rights Under the United States Constitution.

5. The Indictment Against Mr. Lane was Fatally Defective, as a Result of Which Mr. Lane was Denied Due Process of Law as a structural error occurred, as well as plain error, as to all seven (7) counts in the indictment.

6. Mr. Lane was denied the effective assistance of trial counsel for failure to examine prior counsel as witnesses as to the Motion to Withdraw Plea.

7. The convictions for Count I and/or Count II Should Have Merged with the Convictions(s) for Counts(s) III through VII.

(ECF No. 7-1, Exhs. 20, 22.)

On October 4, 2010, Lane's conviction was again affirmed.  *State v. Lane*, 2010-Ohio-

4819, 2010 Ohio App. LEXIS 4098 (Ohio Ct. App., Oct. 4, 2010).

On October 28, 2010, Lane, *pro se*, filed a Notice of Appeal with the Supreme Court of

Ohio raising the following propositions of law:

I. The verbal recitation of a guilty plea by counsel is insufficient to render such a plea valid in the absence of a personal guilty plea by the defendant.

II. Where a trial court fails to inform a defendant that post release control is mandatory as part of the maximum sentence, the subsequent acceptance of a guilty plea is not in compliance with Crim. R. 11(C)(2)(a) rendering the plea involuntary.

III.   Where a defendant is misinformed as to the sentence he will receive as a
result of a guilty plea the denial of a presentence motion to withdraw the
plea is an abuse of discretion.

IV.   A judgment of conviction based on an indictment that does not charge an
offense is void for lack of subject matter jurisdiction.

V.   Where counsel fails to call the sole fact witness in a hearing on a motion to
withdraw a guilty plea and the motion is overruled for lack of proof of fact,
such counsel is ineffective within the meaning of the Constitution.

VI.   Where two or more offenses are committed with a single animus,
convictions and sentences therefore must merge under the Double Jeopardy
Clause of the Constitution.

(ECF No. 7-1, Exhs. 27 & 28.)

On February 16, 2011, leave was denied and the appeal was dismissed as not involving any

substantial constitutional question.  (ECF No. 7, Exh. 30.)

**F.    Second Application to Reopen Appeal**

On December 2, 2010, Lane, *pro se*, filed an Application to Reopen Direct Appeal pursuant

to Ohio App. R. 26(B), arguing appellate counsel was ineffective for failing to raise the

following assignments of error:

1.   The lack of statutory authority to impose consecutive sentences deprived the
trial court of subject matter jurisdiction to do so and renders such sentence
void.

2.   The trial court erred as matter of law in denying Appellant's motion to
suppress recorded confidential attorney–client communications obtained and
used in violation of the Sixth and Fourteenth Amendments.

(ECF No. 7-1, Exh. 31.)

On January 26, 2011, the state appellate court denied the application, finding that Lane

failed to show any genuine issue as to whether he was deprived of the effective assistance of

appellate counsel.  (ECF No. 7-1, Exh. 32.)

-8-

There is no indication Lane appealed this decision to the Supreme Court of Ohio.

**G.  Current Federal Habeas Petition**

On June 8, 2011, Lane filed a Petition for Writ of Habeas Corpus asserting the following grounds for relief:

**GROUND ONE**: Petitioner's right to due process was violated where a plea of guilty was not personally entered by him.

*Supporting Facts*: At the plea hearing, counsel recited the terms of the proposed of the plea agreement into the record and the trial court entered a judgment of conviction. At no time did Petitioner ever enter a guilty plea, rendering the resulting conviction invalid.

**GROUND TWO**: Petitioner was denied due process of law where he was not informed of all of the consequences of the plea and was refused his request to withdraw the plea.

*Supporting Facts*: Petitioner was not advised during the plea or sentencing proceedings that post-release control would be a part of the sentence. This renders the plea invalid as not knowing, voluntary or intelligently entered.

**GROUND THREE**: Petitioner was deprived of due process of law where he was found guilty of offenses not charged, rendering the convictions void.

*Supporting Facts*: The indictment in this case failed to allege any requisite mens rea on any of the offenses charged, none of which constitute "strict liability" crimes and which require an allegation of a culpable mental state.  The lack of properly charging any offense in the charging instruments renders any resulting convictions void.

**GROUND FOUR**: Petitioner was deprived of effective counsel in violation of the Sixth and Fourteenth Amendments.

*Supporting Facts*: In Ohio, a withdrawal of plea proceeding is a direct attack, for which the defendant is constitutionally entitled to counsel. In this case, counsel failed to call the sole fact witness to support the issue as to whether Petitioner was or was not advised that the eventual sentence would be seven years, being former counsel. This was due solely and completely to counsel's failure to prepare for the proceeding, and was the determinative factor which resulted in the denial of the initial withdrawal motion.

**GROUND FIVE**: Petitioner's right to be free from being punished twice for the same act under the Double Jeopardy Clause was violated.

*Supporting Facts*: The charges of complicity to aggravated arson, complicity to aggravated robbery, and complicity to involuntary manslaughter all stemmed from a single act on the part of Petitioner, yet he was subjected to multiple and cumulative punishment therefore, rendering the resulting punishment violative of Double Jeopardy.

(ECF No. 1.)

On September 19, 2011, the District Court transferred this matter to the United States Court of Appeals for the Sixth Circuit pursuant to 28 U.S.C. § 2244(b)(3), indicating that Lane's petition was at least the second petition filed by him challenging his convictions in 2000.  (ECF No. 3.)  On September 26, 2012, the Sixth Circuit found that there was an "intervening judgment" and, therefore, leave was unnecessary.  The Court of Appeals found that the instant petition was not a "second or successive petition" despite the fact that Lane challenges both his conviction and his sentence, noting that it was immaterial whether the claims could have been raised in the first petition.[5]  (ECF No. 4.)  The Court of Appeals further noted that Lane's petition was subject to its statement that a petitioner "cannot 'resurrect' claims that the district court 'denied on the merits' in his first petition."  *Id.*, citing *Storey v. Vasbinder*, 657 F.3d 372, 377 (6th Cir. 2011) (*quoting In re Williams*, 444 F.3d 233, 236 (4th Cir. 2006)).

---

[5]  The Court notes the decision rendered one week earlier on September 19, 2012, in *Billiter v. Banks*, Case No. 5:11-cv-01996-DCN, where a petitioner was also resentenced to impose a term of post-release control.  (ECF No. 6.)  Thereafter, he sought authorization to file another petition.  (ECF No. 1.)  The Court of Appeals, noting that Billiter's claims arose from the original proceedings and could have been brought in his first petition, found that he could avoid "the bar on second and successive petitions set forth at 28 U.S.C. § 2244(b) only to the extent that the petition raises claims that arose during resentencing or could not have been raised in the first § 2254 petition."  (ECF No. 6.)

-10-

### III.  Exhaustion and Procedural Default

**A.    Exhaustion Standard**

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings.  *See* 28 U.S.C. § 2254(b),( c).  This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims."  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  However, if relief is no longer available in state court, exhaustion can be rendered moot:  "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts."  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see Buell v. Mitchell*, 274 F.3d 347, 349 (6th Cir. 2001).

**B.    Procedural Default Standard**

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir.2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)).  A claim may become procedurally defaulted in two ways. *Id.*  First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court.  *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate

grounds for precluding relief, the claim is procedurally defaulted.[6]  *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).  If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991).  This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts.  AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28.  Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review.  *Id.*  In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal.  *Id.* Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted.  *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim.  *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely

---

[6]  In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted.  785 F.2d at 135.  Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice."  *Id*. at 138-39; *Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002).

-12-

as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A

petitioner can take four actions in his brief which are significant to the determination as to

whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon

federal cases employing constitutional analysis; (2) reliance upon state cases employing federal

constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms

sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts

well within the mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir.

2003).

  A petitioner's procedural default, however, may be excused upon a showing of "cause"

for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at

138-39. "Demonstrating cause requires showing that an 'objective factor external to the defense

impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434

F.3d 412, 417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with

constitutional error." *Id.* Where there is strong evidence of a petitioner's guilt and the evidence

supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See*

*United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6th

Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Prejudice does not occur unless

petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been

different. *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (*citing Strickler v. Greene*,

527 U.S. 263, 289 (1999)).

### C. Analysis

Respondent argues that grounds one, three, and five of the petition are procedurally defaulted.  (ECF No. 7 at 19-21.)

In ground one, Lane asserts that his right to due process was violated because he did not personally enter a plea of guilty.  (ECF No. 1.)  Respondent asserts that this claim is unexhausted, as it was never presented as a due process violation in the state courts.  (ECF No. 7 at 19-20.)  Before the state appellate court, Lane argued only that his plea violated Ohio Criminal Rule 11, because he did not personally enter a guilty plea.  (ECF No. 7-1, Exh. 22 at 0250-0254.)  The state appellate court found as follows:

> [*P11]  First, Lane argues that the trial court should not have accepted his plea because he did not actually enter the guilty plea himself; rather, his defense counsel tendered the plea on his behalf.  However, despite Lane's assertions, this Court has stated that "Crim.R. 11 does not require that the defendant himself must orally give his plea to the trial court, thereby not prohibiting the defendant's counsel from orally entering the plea, as long as the remainder of Crim.R. 11 is complied with."  *State v. Nathan* (1995), 99 Ohio App.3d 722, 725-26, 651 N.E.2d 1044.  *See, also, State v. Harvey*, 3d Dist. No. 1-09-47, 2010 Ohio 1628, P7.  "When an accused is present in the court; when the record shows clearly that he knew and understood what was being done; and when it is clear that he acquiesced in a guilty plea entered for him by his attorney; then the plea has the exact same force and effect as though he had personally spoken the words of the attorney."  *Harvey*, 2010 Ohio 1628, at P7, citing *State v. Keaton* (Jan. 14, 2000), 2nd Dist. No. 98 CA 99, 2000 Ohio App. LEXIS 54, at *11,  citing *U.S. v. Denniston* (C.A.2, 1937), 89 F.2d 696, 698.  Therefore, we reject Lane's argument that his plea was invalid because his attorney entered it for him, especially in light of our finding below that the record demonstrates that Lane knew and understood what was being done.

*Lane*, 2010-Ohio-4819 at ¶11.

Lane's argument – that his failure to orally enter his plea violated due process – was simply never raised on direct appeal as a federal constitutional claim.  His argument before the state court was based purely on his interpretation of state procedural rules, an interpretation that

-14-

was rejected.  Therefore, Lane did not sufficiently present a federal constitutional claim to the state courts.  *See Koontz,* 731 F.2d at 368.[7]  A federal constitutional claim is "fairly presented when it is presented at the first possible opportunity" within one completed round of a state's appellate review.  *See, e.g., Cottenham v. Jamrog*, 248 Fed. App'x. 625 (6th Cir. 2007) (citing *Caver v. Straub*, 349 F.3d 340, 346 (6th Cir. 2003)); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998) (finding that the doctrine of *res judicata* applies to constitutional claims that could have been raised in a direct appeal, as well as to the constitutional claims that could have been raised in any post-conviction proceeding.) (citing *State v. Combs*, 100 Ohio App. 3d 90, 652 N.E.2d 205, 209 (Ohio Ct. App. 1994)).  As Ohio courts would no longer consider Lane's claim due to the doctrine of *res judicata*, this ground for relief is procedurally defaulted.  *See, e.g., Patterson v. Kelly*, 2012 U.S. Dist. LEXIS 15590 at *5 (N.D. Ohio Feb. 8, 2012); *Bruce v. Tibbals*, 2011 U.S. Dist. LEXIS 117771 (N.D. Ohio May 11, 2011); *see also Fautenberry v. Mitchell*, 515 F.3d 614, 633 (6th Cir. 2008) (holding Ohio's application of *res judicata* is an actually enforced, adequate and independent state ground on which Ohio state courts consistently refuse to review the merits of a defendant's claims).  Therefore, ground one of the petition should be dismissed as procedurally defaulted unless there are sufficient reasons to excuse the default.

In ground five, Lane argues that his convictions and sentences are tantamount to double jeopardy because all of the charges against him stemmed from a single act.  (ECF No. 1.)

---

[7] Tellingly, Lane did not (1) rely upon federal cases employing constitutional analysis; (2) rely upon state cases employing federal constitutional analysis; (3) phrase his claim in terms of constitutional law; or (4) allege facts well within the mainstream of constitutional law. *See Newton*, 349 F.3d at 877.

Respondent contends that this claim was also not fairly presented to the state courts as Lane's "argument" amounted to one sentence and failed to cite any United States Supreme Court precedent.  (ECF No. 7 at 21-22.)  In fact, Lane's appellate brief failed to cite any federal law and merely argued that the his convictions should have merged.  *Id*.  There is no mention of a possible federal double jeopardy argument.  As with Lane's first ground for relief, he did not fairly present a double jeopardy claim in the state appellate court – at the first possible opportunity – and, therefore, did not complete a full round of state appellate review on the issue.[8] As explained by the Sixth Circuit Court of Appeals, a claim has not been fairly presented unless the precise federal claim being raised in a habeas petition was also raised in state court *as a federal claim*.

> To comply with the exhaustion doctrine, the petitioner must fairly present the "substance" of his federal habeas claim to the state courts so that the state judiciary has the first opportunity to hear the claim.  *Lyons v. Stovall*, 188 F.3d 327, 331 (6th Cir. 1999).  The petitioner must present both the factual and the legal bases of the claim.  *Hicks v. Straub*, 377 F.3d 538, 552 (6th Cir. 2004).  In other words, a petitioner must present "the same claim under the same theory" to the state court.  *Id*. at 552-53 (citation and internal quotation marks omitted).  It is not

---

[8]  Lane did raise a double jeopardy argument in his memorandum in support of jurisdiction before the Supreme Court of Ohio.  (ECF No. 7-1, Exh. 28 at 10-11.)  However, his failure to raise it during the first round of review cannot be cured simply by raising the issue before the Supreme Court.  "It has long been Ohio law, however, that a criminal constitutional question cannot be raised in the Ohio Supreme Court unless it is first presented in the court below."  *Hines v. Kelly*, 2009 U.S. Dist. LEXIS 76359 at **34-35 (N.D. Ohio Jun. 29, 2009) (citing *State v. Jester*, 32 Ohio St. 3d. 147, 154, 512 N.E. 2d 962 (Ohio 1987)).  "The Ohio Supreme Court will generally not reach the merits of claims that were not raised in the underlying appellate proceeding.  Where the state courts are silent as to the reasons for denying a petitioner's due process claim, the Sixth Circuit applies the presumption that the state court 'would not have ignored its own procedural rules and would have enforced the procedural bar.'"  *Id*. (quoting *Simpson v. Sparkman*, 94 F.3d 199, 203 (6th Cir. 1996)).  Therefore, because Lane failed to properly present ground five as a federal constitutional claim at *all* stages of the state appellate process, it remains procedurally defaulted.

> sufficient that all the facts necessary to support the federal claim were before the court or that the petitioner made a "somewhat similar" state-law claim. *Anderson v. Harless*, 459 U.S. 4, 6, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982) (*per curiam*) (citing *Picard v. Connor*, 404 U.S. 270, 276-77, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971)).

*Gross v. Warden*, 426 Fed. App'x. 349, 355 (6th Cir. 2011); *accord Catalano v. Colson*, 493 Fed. Appx. 696, 698 (6th Cir. 2012).  Thus, while Lane's argument that his convictions and sentences should have merged under state law may conceptually be related to a federal double jeopardy argument, his terse statement before the state appellate court that his sentences should have merged did not sufficiently present both the factual and legal basis of his claim.  It also bears noting that the state appellate court did not construe Lane's argument as raising a federal double jeopardy claim and, as such, never addressed the assignment of error in such terms.  *Lane*, 2010-Ohio-4819 at ¶¶44-47.  Therefore, ground five of the petition should be dismissed as procedurally defaulted unless there are sufficient reasons to excuse the default.[9]

Lane has failed to demonstrate either cause or prejudice to excuse his default. To establish "cause," Lane must show "something external to the petitioner, something that cannot fairly be attributed to him[;] . . . some objective factor external to the defense [that] impeded . . . efforts to comply with the State's procedural rule."  *Coleman*, 501 U.S. at 753; *see also Franklin*, 434 F.3d at 417; *Maples v. Stegall*, 340 F.3d 433, 438 (6th Cir. 2003).  Lane does not

---

[9]  While declining to address the merits of Lane's ground five claim, the Court does note it is of dubious merit. As pointed out by the state appellate court, the sentencing judge essentially merged the five complicity to involuntary manslaughter convictions with the complicity to aggravated arson conviction by running those sentences concurrently and noting that they "merge with the same and similar animus."  *Lane*, 2010-Ohio-4819 at ¶45.  Thus, the state appellate court found that failure to merge those convictions prior to sentencing was harmless.  *Id.*  Lane has not set forth any argument, either before this Court or before the state appellate court, as to why his complicity to aggravated robbery and complicity to aggravated arson convictions also should have merged.

-17-

argue, and there is nothing on the face of record to suggest, that there exists any "cause" excusing his failure to raise either ground one or five as distinct federal claims in state court.

Finally, while a petitioner's procedural default may be excused where a petitioner is actually innocent, Lane has made no such claim.  As such, there is no justifiable reason to excuse his default.

Respondent also asserts that ground three – Lane's argument that the lack of *mens rea* in the indictment deprived him of due process – is defaulted.  (ECF No. 7 at 20-21.)  Lane, however, raised such an argument before both the state appellate court (ECF No. 7-1, Exh. 22) and the Supreme Court of Ohio.  (Ecf No. 7-1, Exh. 28.)  Respondent's argument that Lane waived any defect in the indictment by pleading guilty will be addressed on merits review.

### IV.  Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States

Supreme Court.  *See Parker v. Matthews,* 132 S. Ct. 2148, 2012 WL 2076341, *6 (U.S. Jun. 11, 2012); *Renico v Lett,* 559 U.S. –, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002))  The Supreme Court has indicated, however, that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court."  *Parker*, 2012 WL 2076341, *6; *Howes v. Walker,* 132 S.Ct. 2741, 2012 WL 508160 (2012).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*.  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006)

-19-

(*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, ──── U.S. ────, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA.  *Id.* at 786 (internal quotation marks omitted).  The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Id.* at 785.  The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal."  *Id.* (internal quotation marks omitted).  Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id.* at 786–87.  This is a very high standard, which the Supreme Court readily acknowledged.  *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

**A. Grounds Two and Four: Voluntariness of Plea and Ineffective Assistance of Counsel**

Respondent argues that grounds two and four are not entitled to re-determination, as the same issues were raised in Lane's first habeas petition.  (ECF No. 7 at 11.)  In 2002, Lane argued that his conviction was obtained by a plea of guilty that was unlawfully induced, involuntary, and not made with full understanding of the charges or consequences of his plea due to counsel's alleged misrepresentations as to the length of his potential sentence and ability to file an appeal. (ECF No. 7-1, Exh. 15.)  In a separate ground for relief, Lane also argued that, for the same

reasons, he was denied the effective assistance of counsel.  *Id*.

The Court disagrees that ground two of the present petition is the same argument previously raised.  While Lane does challenge whether his plea was knowingly, intelligently, and voluntarily entered, his current argument is based on the trial court's purported failure to inform him that post-release control would be part of his sentence.  (ECF No. 1.)  However, the Court does agree that ground four raises the same arguments presented in Lane's first petition.  After recounting the relevant portions of the state appellate court's decision after Lane's first direct appeal, the District Court previously addressed the substance of Lane's current ground four as follows:

> In the memorandum in support of the grounds set forth in petitioner's habeas petition, it is asserted that trial counsel represented that petitioner would receive a term of seven years and this representation was the basis for petitioner's plea of guilty.  Petitioner claims that the Ohio factors outlined in *State v. Steele*, *supra*, and *State v. Griffin*, 141 Ohio App. 3d 551 (Mahoning Cty. 2001), do not comport with the voluntariness criteria as elaborated in *Brady v. United States*, 397 U.S. 742 (1970).  In addition, in his memorandum to his habeas petition and also in his traverse, petitioner argues ground two, the alleged denial of effective assistance of counsel.

> \*\*\*

> This Court finds that the Ohio Court of Appeals decision on both habeas grounds was not contrary to clearly established federal law or an unreasonable application of federal law.  Also, petitioner has failed to demonstrate by clear and convincing evidence that the Ohio court's factual determinations were incorrect or were based on an unreasonable determination of such facts.

> Furthermore, this Court ordered to be filed a copy of the transcript of the change of plea hearing on August 4, 2000.  As the Court of Appeals noted, petitioner was fully informed of his constitutional rights and asked if he was entering the plea knowingly and voluntarily.  *See* Plea hearing transcript, p. 9, as follows:

>> THE COURT: Has anybody promised you anything other than what has been set forth on the plea negotiation?

MR. LANE: No.

THE COURT: Now, are you doing this knowingly, intelligently and voluntarily?

MR. LANE: Yes, sir.

THE COURT: Now, during the course of the time that you were indicted in this particular case until today, has your attorney been in contact with you on a regular basis?

MR. LANE: Yes.

THE COURT: Has he provided to you what they call discovery sufficient for you to review matters dealing with this case as provided by the Prosecutor's office?

MR. LANE: Yes.

THE COURT: Are you satisfied with your representation in the particular case?

MR. LANE: Yes.

THE COURT: Has there been any questions asked by yourself to your attorney that you weren't satisfied with any answer that you didn't quite understand that you would like the Court to explain?

MR. LANE: No, sir.

THE COURT: Is there anything that your attorney explained to you that you
aren't quite sure of that you would like the Court to explain to you?

MR. LANE: No, sir.

The Ohio procedure and the Ohio court's colloquy conform to *Brady v. United States*, 397 U.S. 742 (1970).  The Court notes that there is a presumption of verity as to a defendant's answers in a Rule 11 hearing.  *See United States v. Trussel*, 961 F.2d 685, 689 (7th Cir. 1992) as follows:

> One especially important consideration is the defendant's answers to the questions posed at his Rule 11 hearing.  We accord the record created by a Rule 11 inquiry a "presumption of verity."  *United States v. Ellison*, 835

-22-

F.2d 687, 693 (7th Cir. 1987). "'[R]ational conduct requires that voluntary responses made by a defendant [when entering a guilty plea] . . . be binding.'" *United States v. McFarland*, 839 F.2d 1239, 1242 (7th Cir. 1989)(quoting *Ellison*, 835 F.2d at 693).

*See also Ramos v. Rogers*, 170 F.3d 560 (6th Cir. 1999).

In ground two, petitioner claims his counsel was ineffective because he represented that he would receive a sentence of only seven years.  Under *Strickland v. Washington*, petitioner must show both that his counsel was deficient and that this deficiency prejudiced the defense so as to render the proceeding unfair and the result unreliable.  Even if trial counsel's representation was deficient, there was no prejudice as the trial judge's colloquy cured any misunderstanding by petitioner. *See Ramos*, 170 F.3d at 565, as follows:

> Moreover, the state trial court's proper colloquy can be said to have cured any misunderstanding [petitioner] may have had about the consequences of his plea. *See Barker v. United States*, 7 F.3d 629, 633 (7th Cir.1993), *cert. denied*, 510 U.S. 1099, 114 S.Ct. 939, 127 L.Ed.2d 229 (1994) (the trial court's "thorough examination at the hearing, taking careful and appropriate measures to dispel any confusion on [the defendant's] part before the plea was accepted," cured any claim that the defendant was prejudiced by erroneous "advice from [the defendant's] trial attorney [that allegedly] led to his misunderstanding of the consequences of his guilty plea"); *Ventura v. Meachum*, 957 F.2d 1048, 1058 (2nd Cir.1992) (the
> trial court's "clear and thorough plea allocution" apprising the defendant "of
> the actual sentencing possibilities" prevented the defendant from claiming prejudice under *Strickland*).  Thus, a claim of ineffective assistance of counsel predicated on allegedly misleading information given by counsel about the terms of a plea agreement can never constitute an "extraordinary circumstance" under *Baker* when the court conducts a proper, clear, and thorough plea colloquy.

> ***

> If we were to rely on [petitioner's] alleged subjective impression rather than the record, we would be rendering the plea colloquy process meaningless, for any convict who alleges that he believed the plea bargain was different from that outlined in the record could withdraw his plea, despite his own statements during the plea colloquy (which he now argues were untruthful) indicating the opposite.  This we will not do, for the plea colloquy process exists in part to prevent petitioners such as Ramos from making the precise

claim that is today before us.  "[W]here the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to that court's inquiry."

For the foregoing reasons, the Court finds both of petitioner's grounds for relief not well taken.

(Case No. 3:02-cv-07358-JWP, ECF No. 22 at 10-15.)

Though the substance of ground four was addressed in the prior petition, it is not altogether clear whether that bars this Court's review.[10]  Nonetheless, Lane has failed to point to anything new in his petition or to any inherent error in the previous determination.  As such, the Court recommends that ground four be found without merit for the reasons stated in the well-reasoned decision rendered in 2002.

In ground two, Lane asserts that his plea was not knowing, intelligent, and voluntary because "he was not advised during the plea or sentencing proceedings that post-release control would be part of the sentence."  (ECF No. 1.)  To be valid, a guilty plea must be entered knowingly, voluntarily, and intelligently.  *See United States v. Dixon*, 479 F.3d 431, 434 (6th Cir. 2007), *citing Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463 (1970) ("Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.")  A trial court

---

[10]  In its Order returning this case to the District Court, the Court of Appeals noted that Lane's petition was subject to its earlier statement that a petitioner "cannot resurrect claims that the district court denied on the merits in his first petition."  (ECF No. 4, citing *Storey v. Vasbinder*, 657 F.3d 372, 378 (6th Cir. 2011) (citing *In re Goddard*, 170 F.3d 435, 437, n. 1 (4th Cir. 1999), *cert. denied*, 132 S. Ct. 1760  (2010).  In *Magwood v. Patterson*, 130 S. Ct. 2788, 2802 (2010), the United States Supreme Court declined to address the question of whether a new sentence would allow a petitioner to challenge anew an undisturbed conviction.  Nonetheless, the Supreme Court rejected the State's argument that a claim is successive if a petitioner had an opportunity to raise it in his first application.  *Id.* at 2796.

should ensure that a "defendant's plea is voluntary and that the defendant understands his or her

applicable constitutional rights, the nature of the crime charged, the consequences of the guilty

plea, and the factual basis for concluding that the defendant committed the crime charged." *Id*.,

*quoting United States v. Webb*, 403 F.3d 373, 378-79 (6th Cir. 2005); *United States v. Goldberg*,

862 F.2d 101, 106 (6th Cir. 1988).

Lane's assertion – that he was not informed during his change of plea hearing that his

sentence was subject to post-release control – is blatantly contradicted by the record.  At the plea

hearing, the following exchange occurred:

> THE COURT:  Now, do you understand whatever sentencing the Court sentences
> you to in this particular case, that after you are sentenced and you serve your
> sentence in the penitentiary, you'd been [sic] subject to what they call Post
> Release Control, which used to be called parole for a period up of up to five (5)
> years, do you understand?
>
> MR. LANE: Yes.
>
> THE COURT:  And do you understand that if you violated Post Release Control,
> you could go back to prison for up to one-half of your sentence.  If the Court
> sentenced you to twenty (20) years, you could go back another ten (10) years in
> increments not to exceed nine (9) month intervals, you understand?
>
> MR. LANE: Yes.

(ECF No. 8 at 71.)

Given the clear explanation by the court, Lane cannot assert that he was unaware that one

of the consequences of his plea was the imposition of post-release control.  Lane's related

argument, that he was not informed of post-release control during the sentencing hearing, is

unavailing.  The sentencing hearing occurred several months *after* Lane entered his guilty plea.

As such, it is immaterial to the issue of whether his plea was knowing, intelligent, and voluntary

at the time it was actually entered.  Ground four is without merit.

**B. Ground Three: Insufficiency of the Indictment**

Lane's claim under ground three is not altogether clear.  The court interprets it as raising two arguments: (1) his convictions are void because he was found guilty of offenses that were not charged in the indictment; and, (2) the indictment failed to set forth the requisite *mens rea* of the offenses with which he was charged.  (ECF No. 1.)

Respondent argues Lane's guilty plea bars this ground for relief.  (ECF No. 7 at 20.)  As the Sixth Circuit recently reiterated, "a voluntary and unconditional guilty plea [generally] 'bars any subsequent non-jurisdictional attack on the conviction.' " *Werth v. Bell*, 692 F.3d 486, 495 (6th Cir. 2012) (quoting *United States v. Corp*, 668 F.3d 379, 384 (6th Cir. 2012)).  The Supreme Court has explained this is so because:

> a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

*Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973).  The Supreme Court has reiterated this principle on several occasions.  *See, e.g., United States v. Broce*, 488 U.S. 563, 569, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989) ("[W]hen the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary."); *Mabry v. Johnson*, 467 U.S. 504, 508, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984) *overruled in part on other grounds by Puckett v. U.S.*, 556 U.S. 129, 138 fn 1, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009) (citing *Tollett* and other cases) ("It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be

-26-

collaterally attacked."). Thus, "after the entry of an unconditional guilty plea, the defendant may

challenge only the court's jurisdiction and the voluntary and intelligent character of the plea

itself." *Werth*, 692 F.3d at 495. *See also United States v. Ferguson*, 669 F.3d 756, 763 (6th Cir.

2012).

Here, Lane pled guilty, and, his challenge to the indictment constitutes a

non-jurisdictional attack.  A similar issue was recently addressed by another court of this district:

> With regard to his specific claims, Banks [the petitioner] argues that he has not
> waived his first and second grounds for relief because the claims are jurisdictional
> in nature and implicate the State's power to prosecute him. Doc. 8, pp. 7-8.  In
> his first and second grounds for relief, Banks challenges the propriety of the
> indictment and argues that the indictment was deficient because it did not include
> all of the necessary elements of the offenses with which he was charged.  In
> particular, Banks argues that, with regard to the aggravated murder count, the
> indictment failed to charge an intent to kill. Doc. 1, p. 4; Doc. 8, pp. 8-16.  With
> regard to the aggravated burglary count, Banks contends that the indictment failed
> to charge the predicate offense of criminal trespass and the culpable mental state.
> Doc. 1, p. 4; Doc. 8, pp. 16-26.  With regard to the kidnapping count, Banks
> argues that the indictment failed to charge the culpable mental state. Doc. 1, p. 4;
> Doc. 8, pp. 19-26.  As a result of these alleged deficiencies, Banks argues that the
> trial court erred when it did not dismiss the indictment.
>
> These claims do not fall within the *Blackledge/Menna* exception or otherwise
> give rise to concerns of a jurisdictional defect that would invalidate Banks' guilty
> plea because omissions or defects in an indictment do not deprive a court of
> jurisdiction.  *See Williams*, 2009 U.S. Dist. LEXIS 126046, 2009 WL 6058620, at
> * 16; *cf. United States v. Cotton*, 535 U.S. 625, 630-31, 122 S.Ct. 1781, 152
> L.Ed.2d 860 (2002) (indictment omissions do not deprive a court of
> "jurisdiction," or in other words, of "its power to adjudicate a case"); *United
> States v. Ball*, No. 93-3743, 1993 U.S. App. LEXIS 32987, 1993 WL 524240 (6th
> Cir. Dec.15, 1993) (in the absence of a showing that the indictment failed to state
> an offense, or that the defendant did not have notice of the charge against him or
> was misled by the indictment, the defendant failed to establish a jurisdictional
> defect which invalidated his guilty plea).  Put simply, the alleged defects in
> Banks' indictment did not deprive the state trial court of its power to adjudicate
> the case.  *See Cotton*, 535 U.S. 630-31.  Thus, Banks' argument that his first and
> second grounds for relief are not waived because the claims are jurisdictional in
> nature is without merit.  Because these claims relate to purported deprivations of
> constitutional rights that occurred before Banks entered his guilty plea, he waived

-27-

them by entering his guilty plea.

*Banks v. Sheldon*, 2013 U.S. Dist. LEXIS 183365 at **17-19 (N.D. Ohio, Jan. 29, 2013)

(footnotes omitted), *adopted by Banks v. Tibbals*, 2014 U.S. Dist. LEXIS 4383 (N.D. Ohio Jan.

14, 2014). As such, ground three is barred by the rule set forth by the Supreme Court in *Tollett*

*v. Henderson*.

Furthermore, if Lane's ground for relief was not barred by the *Tollett* rule, it is well

settled that the federal guarantee of a grand jury indictment does not apply to the states. *See,*

*e.g., Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984) (*citing Branzburg v. Hayes*, 408 U.S.

665 (1972)); *accord Riffel v. Erwin*, 2005 U.S. Dist. LEXIS 11666 (S.D. Ohio 2005). In

addition, "the Constitution does not require any particular state indictment rule ... [or] an

indictment at all if sufficient notice of the charges is given in some other manner." *Id.* (*citing*

*Combs v. Tennessee*, 530 F.2d 695 (6th Cir.) *cert. denied*, 425 U.S. 954 (1976)). Nevertheless,

the Due Process Clause of the Fourteenth Amendment requires that a state must give a criminal

defendant "fair notice" of the charges against him to permit adequate preparation of his defense.

*See Williams v. Haviland*, 467 F.3d 527, 535 (6th Cir. 2006); *Koontz*, 731 F.2d at 369; *Blake v.*

*Morford*, 563 F.2d 248 (6th Cir. 1977). The fair notice requirement is met when a charged

offense "[is] described with some precision and certainty so as to apprise the accused of the

crime with which he stands charged." *Id.*

Lane's indictment gave him fair notice of the charges.[11] Lane is correct that the

_____

[11] To the extent Lane is claiming a violation of a state law, such a claim is also not
cognizable. Although the State of Ohio may require indictment by a grand jury pursuant
to its own constitution, any violation of such right is a matter of state law. The U.S.
Supreme Court has stated many times that "federal habeas corpus relief does not lie for
errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *see also Pulley v. Harris*,

-28-

indictment does not specifically set forth the *mens rea* for the offenses charged.  Nonetheless, that omission alone is not a federal constitutional violation so long as he received fair notice of the charged offense.  This simply requires that the accused be apprised with some precision and certainty of the crime with which he stands charged.  In *Williams v. Haviland*, 467 F.3d 527, 535 (6th Cir. 2006), it was found that fair notice was provided to a defendant even though the indictment did not expressly set out the *mens rea*.  The *Williams* court explained as follows:

> The indictment here undoubtedly provided Williams with fair notice of the charges against him.  The indictment's reliance on references to the principal statutes to identify the *mens rea* elements does not render the indictment insufficient because Williams still had adequate notice of the offenses to prepare his defense.  Although the exact *mens rea* requirements were not stated in the indictment, the indictment  precisely stated the offenses with which Williams was charged so that there could be no confusion on this point.  Moreover, the indictment referenced the principal statutes for the *mens rea* requirement, and thus Williams could have located the statutes and determined the mental states required for the offenses with which he was charged.  The sufficiency of the indictment is bolstered by our prior determination that even in a federal prosecution, which is held to the more stringent requirements imposed by the Fifth Amendment Grand Jury Clause, an indictment is sufficient when it refers to the appropriate statute for the *mens rea* element rather than explicitly specifying the required mental state.  *United States v. Martinez*, 981 F.2d 867, 872 (6th Cir. 1992).  For these reasons, the indictment in this state prosecution satisfied the mandates of due process.

*Williams*, 467 F.3d at 535-36 (footnotes omitted); *accord Peeks v. Sheets*, 2010 U.S. Dist. LEXIS 21202 (S.D. Ohio Mar. 9, 2010).

Lane was apprised of the offenses with which he was charged, and the indictment

---

465 U.S. 37, 41 (1984).  To be entitled to relief in federal habeas corpus, a petitioner must establish that there has been an infringement of a right guaranteed under the United States Constitution.  *Clemmons v. Sowders*, 34 F.3d 352, 357 (6th Cir. 1994).  The violation of the state right to a grand jury indictment in Ohio, and all the procedural safeguards appurtenant thereto, does not automatically implicate a *federal* constitutional right.

expressly enumerated the relevant sections of the Ohio Revised Code.  (ECF No. 7-1, Exh. 1.)

This level of notice is sufficient under *Williams*.  As such, ground three is also without merit.

## V.  Conclusion

For the foregoing reasons, it is recommended that Lane's Petition be DENIED.

/s/ Greg White        <br>
U.S. MAGISTRATE JUDGE

Date: February 6, 2014

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**